UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DWAYNE EDMUND WILSON,

                Plaintiff,

v.

UNKNOWN HOMER et al.,

                Defendants.

_____/

Case No. 2:22-cv-70

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Taskila, Petterson, Martin, Johnson, Miller, Hamel, and Sullivan. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's Eighth and Fourteenth Amendment claims against Defendants Maki and Smith.

## Discussion

**I.      Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. Plaintiff sues Corrections Officer Unknown Homer, Acting Warden K. Taskila, Acting Deputy Warden Unknown Petterson, Corrections Officer Unknown Martin, Corrections Officer T. Maki, Corrections Officer S. Smith, Corrections Officer Unknown Johnson, Resident Unit Manager Unknown Miller, Grievance Coordinator Unknown Hamel, and Corrections Officer Unknown Sullivan.

Plaintiff alleges that sometime prior to March 1, 2020, he reported Defendant Sullivan for stealing out of his and other prisoners' store bags in segregation. Defendant Sullivan was subsequently transferred to Unit 5 where Plaintiff was housed. Defendant Sullivan then began to close Plaintiff's cell door on him whenever he exited his cell. Plaintiff reported the behavior to the Warden and Deputy Warden and Defendant Sullivan began calling Plaintiff a rat.

Plaintiff states that Defendant Johnson then began trying to close Plaintiff's cell door on him. Plaintiff asked him to stop, but he refused. Plaintiff filed a grievance on him and reported him to Defendants Taskila and Petterson, after which Defendant Johnson began calling Plaintiff a rat. Plaintiff also wrote Defendants Taskila and Petterson and asked for help, to no avail. Plaintiff also unsuccessfully sought assistance from Defendant Miller.

Plaintiff asserts that the next prison employee to attempt to shut him in his cell door was Defendant Homer. Plaintiff filed a grievance and again sought assistance from Defendants Taskila, Petterson, and Miller, to no avail. Plaintiff contends that Defendant Miller attempted to downplay the harassment and when Plaintiff continued to beg for help, he began avoiding Plaintiff.

2

On March 1, 2020, Defendant Homer refused to open Plaintiff's cell door so that he could come out to shower, so Plaintiff tried to pull the door open. As Plaintiff was pulling on the door, Defendant Homer hit the button to close the door, causing a sudden force on Plaintiff's arm. Plaintiff heard a popping noise and felt a sudden pain. Plaintiff's arm began to swell up and he continued to have pain, so he asked Defendant Homer to call the nurse, but Defendant Homer refused. Finally, a nurse came by passing out pills and Plaintiff tried to explain what had happened and to give her a kite, but she refused to help him. Plaintiff states that he was denied help for five days, despite his continued pleas. After five days, Plaintiff was seen by a nurse, and after a total of eleven days, Plaintiff was finally seen by a doctor, who sent Plaintiff to the hospital for x-rays. Plaintiff's x-ray showed that the osseous structures of the forearm were normal, but that there was mild soft tissue swelling suggesting possible muscle edema and possible muscle pull. (ECF No. 1-2, PageID.27.)

Plaintiff states that Defendant Miller subsequently moved him out of the unit in retaliation for Plaintiff's complaints. While Plaintiff was packing up to move, Defendant Martin, who works with Defendant Homer, began yelling at him. As Plaintiff was about to walk out the door, Defendant Martin hurried down the hall and told Plaintiff to go back to his cell. Plaintiff complied. Immediately thereafter, the sergeant and a few officers came and took Plaintiff to segregation in cuffs. Plaintiff later received a falsified ticket for threatening Defendant Martin.

Plaintiff went on a hunger strike to protest the unjust treatment. Defendant Maki kept coming to Plaintiff's door and calling him a rat. Defendant Maki also lied about Plaintiff's food intake and failed to report the situation to health care after Plaintiff had been fasting for three days as required by policy. Plaintiff reported the situation to a number of sergeants and other staff,

including the Deputy Warden and the Warden, who said that the paperwork showed that Plaintiff had eaten. Plaintiff then received a false threatening behavior ticket.

Plaintiff was moved to another segregation unit and continued his hunger strike. Defendant Smith repeatedly came to Plaintiff's door in the new unit and told him that he was not having a hunger strike in his unit. Plaintiff states that every time Defendant Smith was working, he would bring Plaintiff's tray and throw it on Plaintiff's cell floor and then say that Plaintiff had eaten. On one occasion, Plaintiff showed the sergeant that all of the contents of his tray were on the floor and explained what had occurred, but instead of dealing with Defendant Smith, he let Defendant Smith write tickets on him.

Plaintiff states that he continues to have pain in his arm and wrist. Plaintiff seeks damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

4

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Defendants Taskila and Petterson

Plaintiff fails to allege that Defendants Taskila or Petterson took any action against him, other than to suggest that Defendants failed to adequately supervise their subordinates or respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Taskila and Petterson encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events surrounding the alleged mistreatment of Plaintiff by subordinates. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's claims against Defendants Taskila and Petterson are premised on nothing more than respondeat superior liability, they are properly dismissed from this action for failure to state a claim.

### B.      Defendant Hamel

Although Plaintiff names Grievance Coordinator Unknown Hamel as a Defendant in this case, Plaintiff fails to make any specific factual allegations against Defendant Hamel in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendant Hamel.

Moreover, to the extent that Plaintiff is attempting to assert a claim against Defendant Hamel related to his handling of Plaintiff's grievances, the Court notes that Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt*

*v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Nor was Plaintiff's right to petition government violated by any failure on the part of Defendant Hamel to act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendant's actions could not have barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress

of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendant Hamel.

### C.   Due Process – Deprivation of Property

Plaintiff asserts that Defendant Sullivan stole property from his store bag. Plaintiff's allegations implicate the protections of the Due Process Clause of the Fourteenth Amendment. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis (Bazzetta II)*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *K'y Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person

deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim regarding the theft of property by Defendant Sullivan is properly dismissed.

### D.    Due Process – Misconduct Tickets

According to the allegations in Plaintiff's complaint, and the exhibits thereto, Plaintiff received false Class I tickets for threatening behavior from Defendants Martin and Maki, and a false Class II misconduct ticket for disobeying a direct order from Defendant Smith.

(ECF No. 1-3.) Plaintiff appears to allege a violation of the procedural protections of the Fourteenth Amendment's Due Process Clause. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

1.      **Plaintiff's misconduct convictions did not impact his sentence duration**

Plaintiff does not allege that his misconduct convictions have any effect on the duration of his sentence—and he cannot. Plaintiff is serving sentences imposed during 2014 for crimes committed during 2009. See MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=258602 (last visited August 8, 2022). For a prisoner like Plaintiff, who is serving a sentence for an offense committed after 2000, even a major misconduct conviction results only in the accumulation of "disciplinary time." Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Therefore, even the most severe of the misconduct convictions had no impact on the duration of Plaintiff's sentence.

2.      **Plaintiff's misconduct convictions did not result in significant and atypical hardships**

The only consequence Plaintiff alleges with regard to the misconduct convictions is time in segregation. Confinement in administrative segregation "is the sort of confinement that inmates

should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459

U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme

circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will

consider the nature and duration of a stay in segregation to determine whether it imposes an

"atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case

(disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*,

515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation

for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868

(61 days in segregation is not atypical and significant). It has also held, in specific circumstances,

that confinement in segregation for a much longer period of time does not implicate a liberty

interest. *See, e.g., Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was

investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460

(6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband

and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only

periods of segregation lasting for several years or more have been found to be atypical and

significant. *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation

implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years

of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district

court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three

years without an explanation from prison officials, implicates a liberty interest).

Here, although Plaintiff may have been housed in segregation pending a hearing on the

misconduct reports, there are no allegations that Plaintiff's disciplinary sanctions following his

major misconduct conviction resulted in detention in segregation. (*See, e.g.,* Misconduct Hr'g Report, ECF No. 1-3, PageID.48.)[1] The only sanction Plaintiff received for that Class I misconduct was a twenty-one day loss of privileges. (*Id*.) Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105E (eff. Apr. 18, 2022). Where a stay of that duration in segregation is not considered an atypical or significant hardship, it defies logic to suggest that the lesser penalty of "loss of privileges" for that duration could be atypical or significant. Sixth Circuit authority bears that out. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that a fourteen-day loss-of-privileges sanction did not implicate the due-process clause); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (nine-month loss of package privileges did not impose an atypical and significant hardship); *Miles v. Helinski*, No. 20-1279, 2021 WL 1238562, at *4 (6th Cir. Jan. 29, 2021) (five days toplock and five days loss of privileges fails to state a due process claim); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) ("thirty days' loss of privileges—did not implicate a protected liberty interest"); *Langford, v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017) (thirty-days' toplock and thirty-day's loss of privileges "does not amount to an 'atypical and significant hardship'").

---

[1] Detention in segregation is not an available sanction for Class II or Class III misconducts. MDOC Policy Directive 03.03.105D (eff. Apr. 18, 2022).

Plaintiff fails to allege any facts showing that he was subjected to conditions which would implicate a liberty interest as a result of the allegedly false misconduct tickets. Therefore, Plaintiff's due process claims are properly dismissed.

### E.      Eighth Amendment

Plaintiff claims that several of the named Defendants violated his Eighth Amendment rights in various ways. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate

14

indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions-of-confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.  Referring to Plaintiff as a "rat"

Plaintiff claims that Defendants Sullivan, Johnson, and Maki called him a "rat" after he filed grievances against them or began a hunger strike. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although

we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at \*2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

The Court addressed a similar situation in *Ford v. Kennerly*, No. 1:16-CV-243, 2016 WL 3049311 (W.D. Mich. May 31, 2016). In *Ford*, the Court stated:

> Plaintiff has failed to allege any facts showing he was ever in a position to fear for his safety. Plaintiff does indicate that the Defendants called Plaintiff a "rat" or "snitch." (ECF No. 1, PageID.21; ECF No. 1-1, PageID.38, 48, 50-51; ECF No. 1-2, PageID.94, 112-113, 115, 133-134, 139.) In each instance, however, the statements clearly reveal that Defendants called Plaintiff those names because he "ratted" or "snitched" on the Defendants, not other prisoners. Moreover, Plaintiff does not allege that any other prisoner heard the statements. Indeed, Plaintiff does not allege that he had a reasonable fear of inmate violence. Therefore he has failed to state an Eighth Amendment claim with respect to Defendants' threats.

*Id.* at \*20.

As in *Ford*, Plaintiff in this case has failed to allege that the term "rat" was overheard by any other prisoners or that he had any reasonable fear of being victimized by other inmates as a result. Therefore, the use of the term "rat" by Defendants Sullivan, Johnson, and Maki did not violate Plaintiff's Eighth Amendment rights. Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages related to the usage of the term "rat" because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim related to this conduct.

##### 2.    Excessive Force

Plaintiff alleges that Defendant Homer violated his Eighth Amendment rights when he attempted to shut Plaintiff's door while Plaintiff was pulling on it, resulting in an injury to Plaintiff. Plaintiff's claim must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)), *quoted in Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

As noted above, Plaintiff claims that because Defendant Homer failed to open the door for Plaintiff to exit his cell at shower time on March 1, 2020, he attempted to pull the door open. While Plaintiff was pulling on the door, Defendant Homer hit the button on the control panel in order to close the door, which pulled against Plaintiff, exerting pressure on Plaintiff's wrist and arm and causing an injury. Plaintiff states that prior to this incident, Defendant Homer had attempted to

close the door on him on several occasions. The Court concludes that Plaintiff has alleged sufficient facts to support a finding that Defendant Homer deliberately injured Plaintiff in violation of the Eighth Amendment.

Plaintiff also claims that Defendants Sullivan and Johnson attempted to close his cell door on him on various occasions, but that they were ultimately unsuccessful in this endeavor. The Court notes that Plaintiff's claims regarding these attempts are vague and conclusory, and that he fails to allege specific dates of the incidents, whether he was actually in danger of being injured by the attempts, or to otherwise describe them in any detail. Therefore, it is not clear that the conduct of Defendants Sullivan and Johnson constituted anything more than harassment. Regardless, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages against Defendants Sullivan and Johnson because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As stated above, Plaintiff's complaint seeks damages as relief. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants Sullivan and Johnson.

### 3.     Lying about Plaintiff's food intake

Plaintiff alleges that while he was on a hunger strike, Defendants Maki and Smith lied about his food intake in order to prevent him from being monitored by Health Services. As stated above, "[i]t is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836. However, Plaintiff fails to allege that he suffered any ill effects as a result of the actions of Defendants Maki and Smith. Therefore, because Plaintiff fails to allege a physical injury, he may not bring a claim for damages. Consequently, Plaintiff's Eighth Amendment claims against Defendants Maki and Smith are properly dismissed.

F. **Retaliation**

Plaintiff claims that Defendants Homer, Martin, Maki, Smith, Johnson, Miller, and Sullivan retaliated against him for filing grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

1. **Defendant Homer**

Plaintiff claims that Defendant Homer retaliated against him for filing a grievance by shutting his cell door while Plaintiff was attempting to open it, thereby causing Plaintiff to be injured. As noted above, Plaintiff's conduct in filing a grievance constituted protected conduct for purposes of a retaliation claim. In addition, the Court notes that purposely injuring a prisoner, as Plaintiff alleges Defendant Homer did in this case, is sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct.

With regard to causation, the Court notes that temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of

retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

While Plaintiff alleges that he filed a grievance on Defendant Homer prior to Defendant Homer's conduct on March 1, 2020, Plaintiff fails to allege that Defendant Homer was aware of the grievance. Nor does Plaintiff allege any other facts showing that Defendant Homer was motivated by a desire to retaliate against him. In fact, it is clear from Plaintiff's complaint that Defendant Homer attempted to shut Plaintiff's cell door on him on multiple occasions prior to Plaintiff's action in filing a grievance. Therefore, the Court concludes that Plaintiff has failed to allege any facts that support the inference that Homer's adverse action was motivated by retaliation for protected conduct. Plaintiff's retaliation claim against Defendant Homer is properly dismissed.

### 2.      Defendant Miller

Plaintiff alleges that after complaining of his injuries for several days, Defendant Miller retaliated by moving him to a different unit in the prison. Moving from one cell or unit to a different cell or unit, standing alone, does not rise to the level of adverse action—it would not deter a prisoner of ordinary firmness from engaging in protected activity. *See, e.g., LaFountain v. Harry*,

20

716 F.3d 944, 948 (6th Cir. 2013) ("Absent unusual circumstances, prison officials, rather than judges, should decide where a particular prisoner should be housed."). Certainly, it may rise to the level of adverse action if the transfer resulted in some other negative consequence, such as an increase in security level, *King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005), movement restrictions, *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010), placement with mentally-ill inmates, *Thaddeus-X*, 175 F.3d at 398, or inability to access the courts or keep a high-paying job, *Siggers-El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005). But Plaintiff alleges no such negative consequence here. Accordingly, his retaliation claim against Miller fails at the second step.

Moreover, it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendant Miller moved him to another unit in retaliation for his complaints. Accordingly, his speculative allegation fails to state a claim against Defendant Miller.

### 3.      Defendant Martin

Plaintiff alleges that while he was packing up to move, Defendant Martin began yelling at

him and ordered Plaintiff to go back to his cell. Plaintiff complied but, nonetheless, the sergeant

and a few officers came and took Plaintiff to segregation in cuffs. Plaintiff later received a falsified

ticket for threatening Defendant Martin. Plaintiff makes a conclusory assertion that the ticket was

retaliatory but fails to allege any facts showing that the ticket was motivated by a desire to retaliate

against Plaintiff. As noted above, such conclusory allegations fail to state a claim.

### 4.      Defendants Johnson, Sullivan, and Maki's use of the term "rat"

Plaintiff alleges that Defendants Johnson, Sullivan, and Maki retaliated against him for

filing grievances on them and going on a hunger strike by calling him a rat. The Court recently

addressed whether calling a prisoner a snitch constituted adverse conduct for purposes of a

retaliation claim:

> In *Ball v. Evers*, No. 19-10315, 2021 WL 3164273 (E.D. Mich. July 27, 2021), the
> court observed: "[i]t doesn't take much to conclude that calling a prisoner a snitch
> in the open and in front of other inmates certainly can be 'consequential.' It is
> widely understood that prisoners do not take kindly to those who report others to
> authorities." *Id.* at *9 (citing *Catanzaro v. Mich. Dep't of Corrs.*, No. 08-11173,
> 2011 WL 768115, at *5 (E.D. Mich. Feb. 10, 2011)); *see also Crum v. Wilkinson*,
> No. 2:04-CV-249, 2006 WL 64607, at *4 (S.D. Ohio Jan. 11, 2006) ("Labeling
> plaintiff a snitch in the presence of other inmates is certainly likely to deter a person
> of ordinary firmness from exercising the right at stake.").

*Sango v. Kinsey*, No. 1:19-CV-1047, 2022 WL 2275714, at *3 (W.D. Mich. May 24, 2022), *report

and recommendation adopted,* No. 1:19-CV-1047, 2022 WL 2275016 (W.D. Mich. June 23,

2022).

The facts in this case are distinguishable, however, because Plaintiff fails to allege that this

statement was overheard by any other prisoners or that the use of this term placed him in any

danger. Therefore, the Court concludes that Plaintiff has failed to show that Defendants Johnson,

Sullivan, and Maki calling him a rat was sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct.

### 5.       Retaliatory conduct by Defendants Maki and Smith

As noted previously by the Court, Plaintiff alleges that he received a false Class I ticket for threatening behavior from Defendant Maki and a false Class II misconduct ticket for disobeying a direct order from Defendant Smith. (ECF No. 1-3.) Plaintiff claims that these tickets were motivated by a desire to retaliate against him for engaging in a hunger strike. The Court assumes without deciding that Plaintiff had a protected right to engage in a hunger strike.[2]

The Court rejects Plaintiff's assertion that the misconduct tickets were false. The hearing officer found that Plaintiff made the threatening statement that prompted the misconduct report written by Defendant Maki, *see Maben v. Thelen*, 887 F.3d 252, 258–61 (6th Cir. 2018) (explaining when hearing officer findings in MDOC disciplinary proceedings have preclusive effect), and Plaintiff acknowledges that he purposely refused to return his food tray to Defendant Smith such that Smith's report that Plaintiff disobeyed a direct order was accurate—Plaintiff claims he had a legitimate reason for disobeying, but there appears to be no question that he disobeyed. Even if the misconduct tickets were true, however, they might still be actionable as retaliatory under certain circumstances. *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007).

Moreover, the misconduct reports were not the only adverse actions related to the hunger strike. Plaintiff also indicates that Maki falsely reported that Plaintiff had eaten. Pursuant to

---

[2] While it is not clear if Plaintiff has a clearly established First Amendment right to engage in a self-imposed hunger strike to protest the conditions of his confinement, a hunger strike may be protected by the First Amendment if it was intended to convey a particularized message. *Malone v. Conley*, No. 1:17-CV-413, 2018 WL 1583973, at *2 (S.D. Ohio Apr. 2, 2018), *report and recommendation adopted,* No. 1:17-CV-413, 2018 WL 3642867 (S.D. Ohio Aug. 1, 2018); *Stefanoff v. Hays Cty., Tex.*, 154 F.3d 523, 527 (5th Cir. 1998).

MDOC policy, staff is required to notify the warden and healthcare staff whenever a prisoner has not consumed food for 72 continuous hours. MDOC Policy Directive 04.06.120 (eff. Jan. 7, 2008). That triggers a medical evaluation and subsequent monitoring. A false report that Plaintiff had eaten would jeopardize Plaintiff's health in that it might prevent the evaluation and monitoring called for by the policy.

The Court concludes that Plaintiff has alleged sufficient facts to preclude dismissal of his First Amendment retaliation claims against Defendants Maki and Smith with regard to their response to Plaintiff's hunger strike.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Taskila, Petterson, Martin, Johnson, Miller, Hamel, and Sullivan are dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court also dismisses, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's Eighth and Fourteenth Amendment claims against Defendants Maki and Smith. Plaintiff's Eighth Amendment claim against Defendant Homer and his First Amendment retaliation claims against Defendants Maki and Smith relating to those Defendants' responses to Plaintiff's hunger strike remain in the case.

An order consistent with this opinion will be entered.


Dated:    August 11, 2022               /s/ Jane M. Beckering
                                        Jane M. Beckering
                                        United States District Judge