UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DWAYNE EDMUND WILSON,
#258602,

        Plaintiff,

v.

UNKNOWN HOMER, et al.,

        Defendants.
_____/

Case No. 2:22-cv-70

Hon. Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R&R) addresses the exhaustion-based motion for summary judgment filed by Defendants Maki and Smith. (ECF No. 30.)

Plaintiff — state prisoner Dwayne Edmund Wilson — filed suit pursuant to 42 U.S.C. § 1983 on April 1, 2022. In his unverified complaint, Wilson asserted that while he was confined at the Baraga Correctional Facility (AMF) in Baraga, Michigan, Defendants[1] violated his constitutional rights by stealing from him, attempting to close him in his cell door, harassing him, moving him to different housing units, issuing him misconduct tickets, lying about his food intake during a

---

[1] Wilson initially named the following as Defendants: (1) Corrections Officer (CO) Unknown Holma (named "Homer" in the complaint), (2) Acting Warden K. Taskila, (3) Acting Deputy Warden Unknown Petterson, (4) CO Unknown Martin, (5) CO T. Maki, (6) CO S. Smith, (7) CO Unknown Johnson, (8) Residential Unit Manager (RUM) Unknown Miller, (9) Grievance Coordinator Unknown Hamel, and (10) CO Unknown Sullivan.

hunger strike, and refusing to help him escape harassment and retaliation at the hands of other staff members. (ECF No. 1, PageID.4-8.) In its August 11, 2022, screening opinion, this Court determined that Wilson's complaint stated the following: (1) an Eighth Amendment excessive force claim against Defendant Holma for injuring Wilson by shutting Wilson's cell door as he attempted to open it, and (2) First Amendment retaliation claims against Defendants Maki and Smith for issuing Wilson misconduct tickets and falsely reporting that Wilson had eaten in response to Wilson's hunger strike. (ECF No. 5, PageID.98, 104-105.)

Defendants Maki and Smith now move for summary judgment, asserting that Wilson did not properly exhaust his administrative remedies. (ECF No. 30.) More specifically, CO Maki and CO Smith argue that Wilson failed to exhaust his retaliation claims through either the grievance process or the misconduct hearing process. (ECF No. 31, PageID.231-232.) Wilson did not respond.

The undersigned respectfully recommends that the Court grant the motion for summary judgment filed by Defendants Maki and Smith. There are no genuine issues of material fact; the grievance and misconduct records provided by Defendants establish that Wilson did not properly exhaust his retaliation claims against Maki or Smith through the grievance or misconduct hearing processes.

II. **Relevant Factual Allegations**

On March 1, 2020, Wilson says that he was in the process of opening his cell door when Defendant CO Holma intentionally closed the door, causing Wilson's arm and wrist to "pop." (ECF No. 1, PageID.5.) Wilson alleges that the "pop" caused him

immense pain and swelling. Wilson says that he immediately began asking for medical attention, but that it took five days for staff to send him to the hospital for his injuries. (*Id.*, PageID.5-6.)

Wilson says that he was later moved to segregation. (*Id.*, PageID.7.) Once there, Wilson says that he went on a hunger strike to protest his treatment at AMF. According to Wilson, Defendant CO Maki repeatedly came to his cell door and yelled at him about eating and being a rat. (*Id.*) CO Maki also refused to report Wilson's hunger strike to health care after it lasted longer than three days, instead lying on Wilson's food intake papers and saying that Wilson had eaten. Wilson then filed a grievance against CO Maki in addition to reporting his conduct to other staff at the facility. After filing his grievance, Wilson says that CO Maki issued him a retaliatory threatening-behavior misconduct ticket. (*Id.*)

After CO Maki issued him a retaliatory misconduct ticket, Wilson says that he was moved to another segregation unit. (*Id.*, PageID.8.) Wilson says that he remained on a hunger strike, but that Defendant CO Smith came to his cell and told him that a hunger strike would not be tolerated in Smith's unit. CO Smith allegedly tried to force Wilson to take his food tray and when Wilson refused, Smith threw the tray on Wilson's cell floor to make it look like Wilson had eaten, so that Smith could report that Wilson was no longer on a hunger strike. (*Id.*) Wilson reported CO Smith's conduct to facility staff but says that staff allowed Smith to continue with his harassment. Wilson further alleges that CO Smith wrote retaliatory misconduct tickets against him. (*Id.*)

3

### III.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138

---

2    If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

## IV. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

5

process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims

6

internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The

respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").

However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit. For example, when an inmate claims that he received a retaliatory misconduct ticket, whether a

8

Class I, Class II or Class III misconduct ticket,[3] the inmate must raise the issue during the initial misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011).[4] If the inmate is claiming to have received a retaliatory Class I misconduct, he must then submit a request for rehearing raising the retaliation issue. *Id.*, 652 F.3d at 693-94; MDOC PD 03.03.105 ¶¶ SSS-TTT (setting forth the Class I misconduct appeal process). Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. *Rush v. Newcomb*, No. 2:18-cv23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *R. & R. adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019); MDOC PD 03.03.105 ¶¶ UUU-XXX (setting forth the Class II and III misconduct appeal process).

---

[3] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.105 ¶ B (eff. date 07/01/18).

[4] In *Siggers*, the Sixth Circuit evaluated the exhaustion of a misconduct-related retaliation claim by looking to the misconduct appeal process. 652 F.3d at 693-94. However, the undersigned acknowledges that in an unpublished opinion written the same year, the Sixth Circuit stated that "[a]s distinct from the outcomes of misconduct hearings, the filing of retaliatory misconduct reports is grievable under MDOC Policy Directive 03.02.130." *Reynolds-Bey v. Harris*, 428 F. App'x 493 (6th Cir. 2011). But it is published decisions that are binding within the Circuit, and *Reynolds-Bey* is not a published decision. 6 Cir. R. 32.1(b); *see also Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011) ("Unpublished opinions are, of course, not binding precedent on subsequent panels . . . but their reasoning may be 'instructive' or helpful." (citation omitted)).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[5]

## V.    Analysis

As set forth above, Maki and Smith argue that Wilson failed to exhaust his retaliation claims through either the grievance process or the misconduct hearing

---

[5] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

process.  (ECF No. 31, PageID.231-232.)  In support of their arguments, Maki and Smith provide Wilson's grievance and misconduct records.

A review of Wilson's grievance records reveals that Wilson filed eleven Step I grievances between March 1, 2020, and January 14, 2021, that he later pursued through Step III of the grievance process.  (ECF No. 31-3, PageID.251-253.)  None of those eleven Step I grievances named Defendant Smith, and only one named Defendant Maki.  (*Id.*, PageID.265-310.)  The grievance that named Maki — grievance AMF-20-04-662-28b — complained about an issue with Wilson's television.  (*Id.*, PageID.268.)  In the undersigned's opinion, Defendants have established that there are no genuine issues of material fact, and that Wilson did not exhaust any of his claims against Smith or Maki via the grievance process.

A similar review of Wilson's misconduct records confirms that Maki issued Wilson a misconduct ticket for threatening behavior on April 6, 2020.  (ECF No. 31-4, PageID.313.)  And it shows that Smith issued Wilson a misconduct ticket for disobeying a direct order on April 26, 2020.  (*Id.*, PageID.318.)  But it also reveals that Wilson did not request a rehearing on the April 6, 2020, misconduct ticket issued by Maki. (ECF No. 31-5, PageID.320.)  And he did not so much as attend the hearing for the April 26, 2020, misconduct ticket issued by Smith.  (ECF No. 31-4, PageID.317.)  As set forth above, a prisoner must raise the issue of retaliation during the initial misconduct hearing and in his request for rehearing or appeal in order to exhaust a retaliatory misconduct claim.  *Siggers*, 652 F.3d at 693-94; MDOC PD 03.03.105 ¶¶ SSS-TTT, UUU-XXX.  In the undersigned's opinion, Defendants have

11

established that there are no genuine issues of material fact, and that Wilson did not exhaust any of his claims against Smith or Maki through the misconduct hearing process.

## VI.   Recommendation

The undersigned respectfully recommends that the Court grant the motion for summary judgment filed by Defendants Maki and Smith.  (ECF No. 30.)  There are no genuine issues of material fact; the grievance and misconduct records provided by Defendants establish that Wilson did not properly exhaust his retaliation claims against Maki or Smith through the grievance or misconduct hearing processes.

If the Court accepts this recommendation, Wilson's Eighth Amendment excessive force claim against Defendant Holma will remain.


Dated:   February 26, 2024                              /s/ *Maarten Vermaat*
                                                        MAARTEN VERMAAT
                                                        U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).